AMOS W. CRAVENER

V.

PRESCOTT G. HALE.

</div>

*Contract to Sell Lands—Condition—Construction—Abstract of Title—Rescission.*

1.   Where a vendor, by agreement, has undertaken to furnish the vendee "an abstract of title showing good title and power and authority to sell and convey," the deposit made by the latter to be returned and the contract determined in case of failure to show good title, and the abstract furnished shows such title, although in fact it is in dispute, the vendor can not place the vendee in default by the tender of the deed.

2.   In the case presented, it is *held*: That the contract is to be construed

*most strongly against the vendor; that he did not bring himself within the condition authorizing a rescission; and that he could not rescind for non-performance by the vendee, as he was not himself in a condition to perform.*

*3. As a general rule a contract can not be determined or rescinded by a party to it unless he is in a position to demand a specific performance.*

[Opinion filed September 18, 1888.]

APPEAL from the Superior Court of Cook County; the Hon. EGBERT JAMIESON, Judge, presiding.

Messrs. H. T. & L. HELM, for appellant.

Mr. JAMES S. MURRY, for appellee.

MORAN, P. J. On December 24, 1886, a contract in writing was entered into between appellant and appellee, as follows:

"Articles of agreement, made this 24th day of December, A. D. 1886, between Amos W. Cravener, party of the first part, and Prescott G. Hale, as trustee under the last will and testament of Matilda Hale, deceased, party of the second part.

"Witnesseth: That if the party of the first part shall first make the payment and perform the covenants hereinafter mentioned on his part to be made and performed, the said party of the second part covenants and agrees at the time hereinafter stated to convey and assure to the said party of the first part in fee simple, clear of all incumbrances whatever, by a good and sufficient warranty deed, the lot, piece or parcel of ground situate in the County of Cook and State of Illinois, known and described as the north one-half ($\frac{1}{2}$) of the northwest one-quarter ($\frac{1}{4}$) of section twenty-three (23), township thirty-eight (38) north, range thirteen (13), east of the third principal meridian, except the east fifty (50) feet thereof, heretofore taken for a railroad right of way and subject also to all streets, alleys and highways, and subject also to all taxes, assessments or other impositions legally levied or imposed upon said land subsequent to the year A. D. 1886.

"And said second party also agrees to furnish to said party

Cravener v. Hale.

on or before January 10, 1887 (or as soon thereafter as the probate proceedings in the estate of Matilda Hale, deceased, can be finally settled and the abstract of title continued to show such settlement), an abstract of title showing good title and power and authority to sell and convey in said second party as trustee as aforesaid.

"And the said party of the first part hereby covenants and agrees to pay to the said party of the second part the sum of $24,000, in the manner following, to wit: $500 cash down upon the signing of this agreement, and within ten days after said second party shall have furnished to said first party said abstract of title as above provided, said first party shall pay to said second party the further sum of $3,500, and will make and deliver to him his four promissory notes dated January 1, 1887, payable to the order of said second party at the Merchants' Loan and Trust Co., Chicago, Illinois; one for $3,000, payable April 1, 1887; one for $5,000, payable one year after date; one for $6,000, payable two years after date, and one for $6,000, payable three years after date, all with interest from date at the rate of six per cent. per annum, payable semi-annually, and at the same time will make, execute, and deliver to said second party a mortgage on the premises above described, securing said four above-mentioned promissory notes, and at the same time the said second party (the first party having performed his contract) will execute and deliver to said first party the warranty deed aforesaid. In case the abstract of title to be furnished as aforesaid, does not show a good title as herein stated, then the five hundred dollars ($500) this date paid thereon shall be returned to said first party and this contract determined.

"In case of a failure of said first party to make either of the payments or to perform any of the covenants on his part made and entered into hereby, then said contract shall, at the option of said second party, be forfeited and determined, and said second party shall retain all payments made as his agreed and liquidated damages. It is hereby agreed that all the covenants and agreements herein contained shall extend to, and be obligatory upon the heirs, executors, administrators, successors and assigns of the respective parties hereto.

"In witness whereof said parties have hereunto set their hands and seals the day and year first above written.

> ' AMOS W. CRAVENER,          [SEAL.]
> " PRESCOTT G. HALE,          [SEAL.]

"Trustees under the last will and testament of Matilda Hale, deceased."

After the making of said contract appellee proceeded to close up the proceedings in the Probate Court, and on or about January 6, 1887, his final account was approved by said court, and appellee was discharged as executor and the estate closed. The abstract of the land mentioned in the contract was extended by the appellee so as to show the final settlement of the estate, and delivered on January 14, 1887, and as soon as it was completed by the abstract makers, to the agent of appellant.

On January 8, 1887, Martin C. Hale, Douglass R. Hale and Franklin M. Hale, three of the children and heirs at law of said Matilda Hale, deceased, filed their bill in chancery in the Circuit Court of Cook County against appellee (and other heirs) alleging, among other things, that the said last will of Martha Hale, deceased, was not the last will of said deceased, and praying, among other things, that the same might be set aside.

The abstract which was delivered to appellant by appellee on January 14, 1887, did not show the commencement of said suit in chancery, though it did show that the same parties who filed said bill objected on January 9, 1887, in the Probate Court, to the discharge of appellee as executor, on the ground, as they alleged, that said will was not the last will of said Matilda Hale.

The abstract furnished to appellant was submitted by him to his solicitor for examination, and on January 20, 1887, said solicitor sent to appellant the following opinion of title:

"*Dear Sir:*—I have given the abstract of title to the land —N. ½, N.W. ¼, Sec. 23, T. 38, 13, in Cook County, Ills.—a careful examination.

"It is my opinion that the title stood at death of Matilda Hale in her, and that she had good right to convey the same, or to devise the same by will. That under the will, if the

same is in all respects valid, Prescott G. Hale, as her trustee, has full right to sell and convey the same, and that a deed from said Prescott G. Hale and her other heirs (none being under disability) will give a good title in any event.    Yours,
"H. T. Helm."

Neither appellant nor his solicitor knew of the filing of the bill attacking the will till after the date of said opinion.  Some negotiations took place between the parties with reference to some arrangement by which the chancery suit might be disposed of and the title passed, but nothing was accomplished; and on March 9th, appellant filed a petition to be made a party defendant in said suit in the Circuit Court, and set out in his petition a copy of said contract for the purchase of the land in controversy, and an order was made by the court making said appellant a co-defendant, with leave to answer.

Appellant did not make the payment of money required by the contract to be made within ten days of the delivery to him of the abstract, and did not make and deliver the promissory notes or mortgage provided for in the contract.  About May 7, 1887, appellee was offered $28,500 for the property in controversy, and, through his attorney, answered that he could not sell till he had gotten rid of the contract with appellant, which he proposed to do.   On May 27, 1887, appellee tendered to appellant a deed of the premises described in the contract, and which was in form according to the contract, and demanded that appellant should pay the money then due under the contract, and should execute and deliver the notes and mortgage according to the terms of the contract, but appellant refused to accept said deed, and to make the payments or execute the notes.   Whereupon appellee tendered to appellant $512.75, being the $500 which appellant paid on the contract with interest thereon from December 24, 1886, when it was paid; but appellant refused to receive said tender or to accept said money, and thereupon appellee declared the said contract determined, and demanded from appellant the abstract of title.   The next day appellant went to the office of appellee's solicitor and there tendered to appellant the money due upon the contract, and offered to receive the deed and execute the mortgage and

notes, provided appellee would procure said chancery suit to be dismissed; but appellee declined, for the reason that he could not get the suit dismissed without the payment of a large amount of money.

On June 4, 1887, the bill in this suit was filed, showing that appellant refused to discharge said contract, and that by his filing a copy thereof in said suit in the Circuit Court it had become a cloud on the title of appellee, and that appellant claims a conveyance of said premises, but insists that said chancery suit should be settled, or caused by appellee to be dismissed, and praying that said contract be declared null and void, and be removed as a cloud on appellee's title, and be ordered delivered up and canceled. On the hearing, the facts above set out appeared from the pleadings and proofs of the respective parties, and upon said facts the court entered a decree granting the relief prayed for in appellee's bill.

The correctness of the decree depends upon the question whether, under the terms of the contract and the facts stated, appellee had a legal right to rescind the contract and tender back the deposit paid by appellant. The terms of the contract obligated appellee to convey and assure to appellant a fee simple title to the premises described, and to discharge such obligation appellee was bound to convey a marketable title, that is, a title not subject to such reasonable doubt as would create a just apprehension; one that would be regarded as merchantable, so that persons of reasonable prudence and intelligence would be willing to take it and pay the fair value of the land. Parker v. Porter, 11 Ill. App. 602; Brown v. Cannon, 5 Gilm. 174; Snyder et al. v. Spaulding, 57 Ill. 480.

It is very plain that the title to the land mentioned in the contract was not in merchantable condition at the time appellee tendered the deed to appellant and demanded the performance of the contract, and appellee not being able to convey such a title as would satisfy the covenants in his agreement, could not put appellant in default by tendering the deed and demanding performance of the contract. Appellant had not agreed to accept such a title as was offered to him, and no prudent man would do so while subject to the uncertainty cast

upon it by the filing of the bill.   Indeed, it is frankly admitted by counsel for appellee in his brief filed in this court, that appellant could not be compelled to accept any other than a good title, and he states that appellee has never insisted that appellant was bound to accept the title in view of the litigation that was developed after the contract was made.   If appellant was not put in default by the tender of the deed, then appellee had no right to rescind the contract on the ground that appellant refused to perform it.

It is contended by appellee that the conditions in the contract authorized him to rescind, if the title was not found good.

The condition is:   "In case the abstract of title to be furnished as aforesaid does not show a good title, as herein stated, then the $500 this date paid thereon shall be returned to said first party, and this contract determined."   Now, it is obvious that any party who seeks to determine his contract by availing himself of a condition therein contained providing for such determination, must bring himself strictly within the terms of such condition.   The condition is not to be liberally construed, nor enlarged to include facts or circumstances not within its terms, but on the contrary, is, in contracts for the sale of lands, to be taken most strongly against the vendor. In Greaves v. Wilson, 25 Beav. 290, which was a bill for specific performance in a case in which vendor sought to determine a contract under a condition contained in it, the court said: "The mode in which these conditions must be construed is explained in all the cases upon the subject.   They must be construed, like every other instrument, most strictly against the person who frames them, because the vendor alone can be the sole judge of the necessity or propriety of making such conditions before he offers the property for sale.   In addition to that, it is to be borne in mind that a person who offers property for sale becomes subject to certain duties, in the character of vendor, and that he does not get rid of them by special conditions of sale."   It is further said in the same case, that " A vendor can not make use of a condition to rescind a contract for the purpose of getting rid of the duty which attaches to him upon the rest of the contract, of mak-

ing out a title," and to this effect is Page v. Adams, 4 Beav. 2,;9. In In re Jackson, 14 L. R. Ch. Div. 851, the rule laid down in Greaves v. Wilson, *supra*, was followed in a case where the condition provided, among other things, that objection should be made within fourteen days from the delivery of the abstract, and if none were made within the time the title was to be deemed accepted, and if the purchaser should insist on any objection which the vendor should be unable, or on the ground of expense, should decline to remove, then the vendor should be at liberty to rescind the contract by notice, unless the purchaser should, by notice, withdraw the objection, and upon rescission the purchaser should receive back his deposit.

The abstract delivered did not show the real state of the title, and after the title as shown by abstract was approved, it was discovered that there was an equitable mortgage on the leasehold of which the vendor was ignorant. The purchaser insisted that this should be discharged and the vendor gave notice that he was unable and unwilling, on the ground of expense, to comply, and that he would rescind the contract unless the objection was withdrawn. The purchaser refused to admit the rescission and applied to the court, and it was held that there could be no recission, as the objection did not come within the condition, not having been shown by the abstract, and that the charge upon the property should be cleared off by the vendor.

See, also, Roberts v. Wyatt, 2 Taunt. 268, where a condition in a contract of sale by which the contract was to be void in case the vendor could not deduce a good title, is construed by Lord Mansfield to give an option, not to the vendor, but to the purchaser, to avoid the contract for failure to deduce such good title.

Now, in view of this rule of strict construction as against the vendor, as illustrated by these cases, has appellee brought himself within the condition which he seeks to avail himself of to rescind this contract? He agreed to furnish to appellant an abstract of title showing good title and power and authority to sell and convey in himself, and provided a condition that, in case the abstract of title to be furnished did not

Cravener v. Hale.

show a good title, the deposit should be returned and the contract determined. The abstract which he furnished showed a good title; therefore it is clear that, if nothing further had arisen to affect the title, appellee would have no right to rescind the contract under the condition. Facts existed not shown on the abstract furnished by appellee, which rendered the title not good, but the existence of such facts can not avail appellee as a basis of rescission, for the condition only authorizes rescission "in case the abstract to be furnished as aforesaid does not show a good title."

It will not do to suggest that the abstract, if perfect when delivered to appellant, would have failed to show the title good. Appellee took upon himself the duty of furnishing the abstract, and he furnished the one delivered as a compliance with his undertaking, and he can not allege his own error or default in order to bring himself within the condition, and accomplish a rescission. This case is not like the case of Hoyt v. Tuxbury et al., 70 Ill. 332, and Brizzolara et al. v. Mosher et al., 71 Ill. 41, cited and relied on by counsel for appellee. In the first of those cases the provision was that payments were to be made in a certain time "after the title had been examined and found good." In the second case the clause in the agreement was, "should the title to the property not prove good, then the payment to be refunded."

So in Mauson v. Fletcher, L. R. 10 Eq. 212, the condition was very broad, being, in effect, if any objection to the title be persisted in, the vendor shall be at liberty to rescind the contract on returning to the purchaser his deposit. The difference between the conditions and provisions of the contracts in those cases and that in the case under consideration is too obvious to require specification. Such cases establish no rule for the construction of this condition.

Our conclusion is that appellee could not rescind the contract under its terms, as he did not bring himself within the condition authorizing a rescission, and he could not rescind for non-performance by the appellant, because appellee was not himself in a condition to perform. As a general thing, a contract can not be determined or rescinded by a party to it

unless he is in a position to demand a specific performance. Baker v. Bishop Hill Colony, 45 Ill. 264; Howe v. Hutchinson, 105 Ill. 501; Johnson v. Pollock, 58 Ill. 181.

The decree of the court, annulling the contract and directing its cancellation, can not be sustained, and the same will be reversed and the case remanded, with directions to the Superior Court to dismiss appellee's bill.

*Reversed and remanded.*