AARON B. MEAD AND ALBERT L. COE

v.

JOHN P. ALTGELD.

33 373
136s 298

33 373
43 360

*Agency—Sales—Real Property—Deposit on Contract for Purchase— Recovery of—Unsatisfactory Title—Evidence—Experts.*

1. The construction of a written agreement is for the court.
2. The personal undertaking of a real estate agent to return a sum received by him as a payment, in case the title to certain property of his principal under contract of sale should be shown to be defective, is not inconsistent with the character of agent.
3. A purchaser of real estate should receive a title good beyond a reasonable doubt.
4. The sufficiency of a title is a question of law for the court and in con-

troversies involving the same, the opinions of lawyers as experts should not be considered.

5. Errors which do no harm can not be complained of.

[Opinion filed July 2, 1889.]

APPEAL from the Circuit Court of Cook County; the Hon. A. N. WATERMAN, Judge, presiding.

Messrs. McCLELLAN, CUMMINS & MOULTON, for appellants.

The evidence shows that the contract for the sale of the land was between Mrs. Ray and Mr. Altgeld; that Mead & Coe, the appellants, acted only as her agents in making the sale, and that the money was paid to them as her agents That contract defined the rights of the parties to it. An agent who has acted in good faith in a transaction upon which money has been paid to him on account of his principal, can not be liable in a suit to recover back the money. Ewell on Agency, p. 419, top paging, marginal p. 312 and following pages; Shepherd et al. v. Underwood, 55 Ill. 475, where the English cases on this point are cited and commented on and the above doctrine deduced; see pp. 480–1.

In Bamford v. Schuttleworth, II Adolphus & Ellis, 926, it is noted that the money had been paid over in that case, but the decision was not put upon that ground, one of the judges remarking that it was immaterial whether it had been paid over or not, the others putting it upon the ground that there was no privity of contract between the vendee and the agent.

Stephens v. Badcock, 23 E. C. L. 160, is also commented on and approved by the court, which seems to have been an action against an attorney's clerk for moneys collected and receipted for in the name of the attorney and the action of the client against the clerk held not to lie.

In Sadler v. Evans, 4 Burroughs, 1934, Lord Mansfield sustains the doctrine that the action ought to be brought against the principal, unless in special cases.

In Colvin v. Holbrook, 2 Comstock, 126, the conclusion

seems to have been arrived at that an agent receiving money for his principal in pursuance of a valid authority, without fraud, duress or mistake, is not liable in an action on behalf of the person who is ultimately entitled to the money, for neglecting to pay the same upon request and before it is paid over to the principal.

In Costigan v. Newland, 12 Barb. 456, the same principle is recognized, and it is said the case of Colvin v. Holbrook must be regarded as settling the law in that State.

It is laid down in 1 Parsons on Contracts, 79, that where money is paid to one as agent, to which another as principal has color of right, the right of the principal can not be tried in an action brought by the party paying the money, against the agent, as for money had and received, for the use of such party, but such action should be brought against the principal. See also King v. Hurd, 2 Ill. App. 212; Warder v. White, 14 Ill. App. 50.

The above doctrine is stated in Ewell on Agency, top paging 421, marginal paging 313, as follows:

" Where money has been paid to an agent, the courts have declined to allow an action to proceed against the agent for the purpose of trying the validity of the right claimed by the principal," and the authorities are there cited, criticised and examined in the following pages and the above doctrine fully sustained. On page 423, top paging, marginal p. 315, it is stated :

"Where an action is brought against an agent, but on the ground that the payment was made by mistake, or for the purpose of testing a right claimed by the principal, the action will not lie." On page 426, top paging, marginal p. 318, it is stated :

" Want of privity between the agent and principal parties has often proved fatal to the right of the latter to recover money from the agent."

The court erred in admitting in evidence on behalf of the appellee the opinions of certain attorneys and counselors at law, as shown by the record, that the title of Mrs. Ray was not a good and marketable title.

Whether the evidence on the part of the appellee proved the title of Mrs. Ray to be not good, which was the case the appellee was bound to make out to entitle him to recover, was a pure question of law.

The latest case we find on the subject is Murray v. Ellis, 112 Pa. St. Rep. 485, S. C., 3 Atlan. Rep. 845. That case was an action to recover money paid under an agreement for the purchase of real estate where the buyer rejected the title as not good and marketable. The court says, as to the opinion of counsel in relation to the soundness of the title, "The court properly rejected the opinion of William Gorman, Esq., as to the marketable character of the title, for that was a question for the determination of the court on the papers and other facts submitted to it, and the opinion of a witness, however learned, could avail nothing."

In Canfield v. Gilbert, 4 Esp. 221, be'ng an action to recover money deposited on purchase of real estate, Gibbs, of counsel for plaintiff, put it to Lord Ellenborough as to the plaintiff's right to recover, that the opinion of different conveyancers had been taken on the title, who were of opinion the title was defective and ought not to be taken by the plaintiff, and asked whether it might not be sufficient for him to rely on the fact of such conveyancers advising the plaintiff not to complete the purchase, or whether it was necessary for the plaintiff to go into the title and show it was defective. Lord Ellenborough held it was necessary for the plaintiff to show the title was bad.

The case came on for hearing at the Easter term, 1803, on verdict for the plaintiff, subject to the opinion of the court (see 3 East, 516) where the question of title was considered as a pure question of law. See also Brooks v. Clark, 1 Swanst. 551.

Alpass v. Watkins, 8 T. R. 516. Action to recover back deposit money. The court considered the question of title as a question of law.

Wild v. Foote, 4 Taunt. 334, is to the same effect.

In Mabberley v. Robbins, 5 Taunt. 625 (an action at law), the court passed on the title.

In Boehm v. Wood, 1 Jacobs & Walker, 419, the court says: "The doubts of conveyancers, whether the title is good or bad, amount to nothing."

"A scientific person called as a witness is not entitled to give his opinion on the merits of the case." Jamison v. Dunkald, 12 Moore, 158.

"A witness can not be called and give his testimony on a mere probability." 2 Best on Evidence, Note to Sec. 513, p. 873, citing People v. Rogers, 13 Abb. N. S. 370; Moorehouse v. Matthews, 2 Comst. 514.

Nor unless opinion relates to matters of skill. Best on Evidence, *supra;* citing numerous cases.

But must be based on all the evidence. Best on Ev. 874.

For reasons for limiting introduction of expert evidence. see 2 Best on Evidence, Sec. 511.

A witness can not be asked what would have been his conduct. 2 Best on Evidence, p. 880; Greenleaf on Evidence, Sec. 441.

Messrs. Brandt & Hoffman, for appellee.

The first point made by counsel is that this action will not lie against appellants but should have been brought, if at all, against Julia M. Ray. To sustain this proposition they cite Shepherd v. Underwood, 55 Ill. 475, which holds directly the contrary. They also cite several other cases, nearly all of which are taken from the opinion in the case above named. Not one of the cases cited by counsel to this point tend to support the position assumed by them, and they serve no purpose in this case except to fill the pages of an argument.

In Story on Agency, Sec. 269, the following occurs: "In the next place, a person contracting as agent will be personally liable, whether he is known to be an agent or not, in all cases where he makes the contract in his own name, or voluntarily incurs a personal responsibility, either express or implied." The text of this section then goes on to give many instances of the liability of an agent when he contracts in his own name, and cites scores of cases showing that appellants are liable in this case, if any one is. The terms of the contract signed by appellants expressly declare that if the title proves

to be not good, the $1.000 "will be refunded *by us*," appellants, to appellee. The money was paid to appellants, and the contract expressly bound them to return it. That appellants are liable under this contract, if appellee is entitled to recover this $1,000 at all, is a proposition too elementary to receive or justify discussion.

Appellee testified that he refused to pay the $1,000 to appellants till they agreed to bind themselves personally to return the money if the title was not good. The court received this evidence but held that he did not consider it as in any way modifying or altering the terms of the contract. By the terms of the contract appellants bound themselves explicitly to return the money if the title was not good.

Moran, J. This action was brought by appellee to recover from appellants money which he had deposited with them for which they delivered to him a receipt as follows:

"Chicago, March 29, 1886.

"Received from John P. Altgeld, one thousand dollars, first payment on contract for purchase of lots 4, 5, 6 and 7 in the Superior Court partition of the S. $\frac{1}{2}$ of B. 23 in C. T. Sub. of the W. $\frac{1}{2}$, W. $\frac{1}{2}$, N. E. $\frac{1}{4}$, Sec. 17, 39, 14. It is understood and agreed that in case the title proves to be not good, this one thousand dollars will be refunded by us to Mr. Altgeld.

"$1,000..                        Mead & Coe, Agents,

"Per Wentworth."

At the same time this paper was executed a contract for the purchase of these lots was made between appellee and one Julia M. Ray for $30,000. Appellants were the agents of Mrs. Ray, and delivered to appellee an abstract of title of the premises, which was examined by appellee's attorney, who pronounced the title shown thereby to said lots not good in said Julia M. Ray. Appellee returned the abstract to appellants and showed them the opinion of his attorney, Gen. G. W. Smith, thereon, and declined to take the land unless he was given a merchantable title thereto. Appellee demanded from appellants the money mentioned in the said receipt, and though no steps were taken to perfect the title by either

appellants or their principal, they refused to return the money to appellee. Thereupon this action was brought and was tried before the judge without a jury, and a finding and judgment rendered in favor of appellee.

Appellants' first contention is that the contract between Julia M. Ray and appellee and the receipt given by appellants are to be construed together; that appellee knew appellants were acting as agents for Mrs. Ray in receiving and receipting for the money, and that it was received, in fact, under the contract between appellee and said Mrs. Ray, and that appellants are not liable personally on said receipt. It is for the court to construe the receipt, which is in writing, and it is very clear that in form the appellants personally undertake to refund the $1,000, in case the title should prove to be not good. Such a personal undertaking is not inconsistent with the character of agent, and it is well settled that where an agent expressly charges himself personally, he will be so held whether he is known to be an agent or not. Mechem on Agency, Sec. 558; Story on Agency, Sec. 269.

Whether appellants would be liable if they merely received the money for their principal and gave no personal promise to pay it back, need not be here considered. Appellants are liable on the express terms of the receipt executed by them personally to appellee. Appellants contend that it is not shown by the evidence that the title was not good.

Secondary evidence of the contents of the abstract furnished by appellants to appellee was introduced (a proper foundation having been laid for the introduction thereof) from which if appeared that block 23, in which the lots purchased by the appellee were situated, was conveyed November 18, 1851, by deed from the canal trustees to S. Lockwood Brown and *James* Matterson.

In 1854 Brown brought a partition suit against the canal trustees and the heirs of *Joseph* Matterson. The bill alleged that the canal deed should have run to *Joseph* Matterson as the real purchaser. A decree was entered in this partition suit which declared that the deed was made by mistake to

James Matterson, that Joseph Matterson was the real pur-- chaser of the property, and directing that the canal trustees should convey to the heirs of Joseph Matterson one-half of the block, and divided the block by assigning the north one-half to Brown, and the south half to the heirs of Joseph Matterson. The abstract further showed that in 1866 the canal trustees made a deed whereby, after reciting that in 1851 they had conveyed to Brown and James Matterson, they, in pursuance to the decree of the court in the partition suit, convey the north half of said block 23 to Brown, and the south half to the heirs of Joseph Matterson.

Afterward there was a partition suit between the heirs of Joseph Matterson, by which the lots in question were assigned to Julia Matterson, now Mrs. Ray. The objection to the title arises from the fact that neither James Matterson, if there was such a person, nor his unknown heirs, were made parties to the partition suit, and that no conveyance was made from S. Lockwood Brown to the heirs of Joseph Matterson. If in fact, Joseph Matterson paid for one-half the property, his heirs should be entitled to have a deed made to them by Brown; for if *James* Matterson was not in existence, Brown took the entire legal title by the deed from the canal trustees. Davy v. Kemp, Bridgman R. 384; Overton v. Lacy, 6 T. B. Monroe, 13; Freeman on Co-tenancy and Part. Sec. 28. If there was such a person as James Matterson, the legal title to one-half the block vested in him, and the decree in the partition suit did not affect that title, as neither he nor his heirs were made parties.

We are of opinion that the title was not good. The rule of law is that " a purchaser who bargained for a good title shall not be compelled to take one which is subject to suspicion. This does not mean that the title shall be good beyond a possible peradventure, for then he might never be satisfied; but it must be free from reasonable doubt. It must be a title to which no reasonable man would object; such a one as a prudent man would not hesitate to invest his own money upon, at a full market price; such a one as will bring in the market as high a price with as without the ob-

jection." Brown v. Cannon, 5 Gilm. 174; Parker v. Porter, 11 Ill. App. 602; Cravenor v. Hale, 27 Ill. App. 275, and Parmlee v. Head, 33 Ill. App. 134. No prudent man would be willing to take the title offered and pay full price for it. It was for Mrs. Ray or her agents to clear up the doubt and remove the suspicion, and they have taken no steps to do so.

Appellants' last contention is that the court erred in admitting the opinions of lawyers as experts, to show that the title as shown by the abstract was not a marketable one.

This position of appellants is correct. The sufficiency of the title was a question of law, and it was not competent to prove what were the opinions of lawyers or conveyancers. Parmlee v. Head, 33 Ill. App. 134; Murray v. Ellis, 112 Pa. St. 485; Canfield v. Gilbert, 4 Esp. 221; Alpass v. Watkins, 8 T. R. 516.

But while this was error, it was error that did not injure appellants. If the facts relating to the title had not been stated to the court, and the judge had nothing to rely on but the opinions of said lawyers, the judgment would have been reversed for the admission of such evidence. But the facts appear in the record. The contents of the abstract showing the title was proved to the court, and the judgment of law rendered on said facts is correct, as we have already seen. It is only injurious error which will reverse.

The objections of appellants can not be sustained, and the judgment of the Circuit Court must therefore be affirmed.

*Judgment affirmed.*