## Edward Goodridge et al. v. Nathan N. E. Wood.

### Gen. No. 13,249.

1. PROPOSITION—*right to withdraw, before acceptance.* It is a principle of the law of contracts that an offer of a bargain by one person to another imposes no obligation upon the former until it is accepted by the latter according to the terms in which the offer was made. Any qualification of or departure from those terms invalidates the offer unless the same be agreed to by the person who made it. Until the terms of the agreement have received the assent of both parties, the negotiation is open and imposes no obligation upon either.

2. PROPOSITION—*what equivalent to rejection of.* A counter-proposition or a modified acceptance of a proposition is, in effect, a rejection thereof.

3. AGENT—*when liable, and when principal not, for return of money.* Where an agent receives a deposit upon behalf of his principal and personally undertakes to return the same upon a par-

ticular contingency, it is the agent, and not the principal, that is liable for the return of such money.

Assumpsit. Appeal from the County Court of Cook County; the Hon. WILLIAM C. DEWOLF, Judge, presiding. Heard in this court at the October term, 1906. Affirmed. Opinion filed April 29, 1907.

F. L. SALISBURY and M. MARSO, for appellants.

W. KNOX HAYNES, for appellee.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

This is an appeal from a judgment of $525.75 in favor of the appellee, who was plaintiff below, against the appellants, who were defendants below.

The action was in assumpsit for money deposited by the plaintiff with the defendants under the conditions of the following receipt:

"Chicago, April 21, 1905.

Received of Dr. Nathan N. E. Wood Five Hundred ($500) Dollars to apply on contract of even date herewith for the purchase of Nos. 628 and 630 LaSalle Avenue, Chicago, Cook County, Illinois.

It is understood that said deposit and said contract shall be held by us for the mutual benefit of the parties thereto after the same shall be signed by the seller.

It is further understood and agreed that we are this day to forward said contract to the seller of said property for their approval and signature, and that in the event of their not approving the same, the said contract shall be cancelled and thereupon become null and void, and should no other contract be made to take its place, then the said Five Hundred ($500) Dollars shall be refunded to the said Nathan N. E. Wood.

GOODRIDGE, FRENCH & Co."

The judgment was on the verdict of a jury, and was for the $500 and interest. A motion for a new trial was denied and this appeal resulted.

There is very little conflict in the evidence. It is on the

legal effect of the facts proven, that the parties differ.  These facts are that appellants, who were in the real estate agency business under the name of Goodridge, French & Co., represented the Mutual Benefit Life Insurance Company of Newark, New Jersey, in offering for sale certain house property in Chicago, known as 628 and 630 La Salle avenue. The plaintiff Wood, after a personal interview with one of the partners, made them a written proposition for purchase, the essential part of which was as follows:

"I make you the following offer, which I authorize you to submit to your clients, the owners:    This offer, however, to be withdrawn unless accepted on or before April 25, 1905, to-wit:    I will purchase the property at $20,000, if I can have it on the following terms, viz.:    Payment to be $5,000 cash, to be paid on delivery of deed with guarantee policy issued by the Chicago Title & Trust Co., guaranteeing the title clear and perfect, or a merchantable abstract showing good and perfect title confirmed by opinion of a reliable Chicago attorney satisfactory to me.    Deferred payments of $15,000," etc.

There were other conditions inserted in the offer, but as the whole offer was superseded by the contract hereinafter described, it is not necessary to state them.

The defendants then invited Wood to call at their office, and the payment of the $500 and the giving of the receipt heretofore set forth occurred.    This was on April 21, 1905. Contemporaneously a form of contract of purchase and sale was submitted by the defendants to appellee and signed by him.    This was the contract referred to in the receipt.

The contract specified that the sale was subject to existing leases and certain taxes, etc., recited the payment of $500 by the purchaser "as earnest money, to be applied on such purchase when consummated," and then provided for the payment of the balance of the $20,000 purchase money in installments, to be secured by notes and a trust deed for certain form.    There followed other conditions usual in such contracts, concerning the delivery and examination of an

abstract of title, and subsequent action on the title if found defective. The instrument contained also this clause:

"Should said purchaser fail to perform this contract on his part at the time and in the manner herein specified, the earnest money paid as above shall, at the option of the vendor, be forfeited as liquidated damages, and this contract shall thereupon become and be null and void."

Further it provided:

"This contract and the said earnest money shall be held by Goodridge, French & Company for the mutual benefit of the parties concerned, and after the consummation of the sale they shall be at liberty to retain the cancelled contract permanently; and it shall be the duty of said Goodridge, French & Company, in case said earnest money be forfeited as herein provided, to apply the same, first, to the payment of any expenses incurred for the vendor by his agent in said matter, and second, to the payment of vendor's broker of a commission of 2½ per cent on the selling price herein mentioned, for his services in procuring this contract, rendering the overplus to the vendor."

Eight days thereafter, April 29, 1905, Goodridge, French & Co. informed Wood by letter that an abstract of title to the property was ready for delivery to him for examination, and Wood came to the office and took the abstract, and inquired whether Goodridge, French & Co. had heard from the owners of the property in regard to their acceptance of the proposed contract. Albert Goodridge informed him that they had not.

Wood testified that at some time between April 29 and May 6 he had another interview with Albert Goodridge; that Goodridge then said they had heard from their clients and the proposed contract was not satisfactory to them, but that they proposed to have their attorney in New Jersey draw up a contract, which they would forward in a few days, and that he, Wood, had replied that there was nothing to do but to wait and see what they proposed.

Goodridge v. Wood.

Albert Goodridge, on the other hand, does not seem to remember such an interview as this, but Wood and Goodridge seem practically to agree on the substance of an interview which Wood says was on May 8, and Goodridge by inference places on the day following.

May 6, 1905, Goodridge, French & Co., wrote to Wood: "We have this morning received contracts from our company and would thank you to call at our office if convenient Monday morning." As May 6 was Saturday and May 8 Monday, it would seem probable that Wood's recollection was correct in placing the conversation about the contracts on that date.

The abstract which Wood had received from Goodridge, French & Co. was returned to them on May 9, as appears by the receipt of Goodridge, French & Co. in evidence. It was when that abstract was returned, undoubtedly, that the objections to the title raised by the lawyer whom Wood had employed to examine it were handed to Mr. Goodridge, for Goodridge says that he at once took the opinion and the abstract together to the lawyer for the insurance company. Goodridge also says that the conversation about the contracts which they had received from the insurance company was at the time that Wood brought in the objections. But it does not seem at all material to us whether the said conversation was on May 8 or May 9. Whenever it occurred, Wood says that he was then handed a contract different in form from the one which he had signed on April 21; that he was told by the appellants that it was the proposed new contract which had been drawn up and forwarded from their clients in New Jersey; that he read it and returned it with the statement that the terms of it were not satisfactory to him, and that he would not sign it.

Goodridge's version of the conversation is that he told Wood that they had received from the insurance company a form of a contract drafted by their legal department, which the company would prefer to have signed to the contract signed on April 21, to which Wood replied that he was not willing to consider any such contract; thereupon he, Good-

ridge, said to Wood: "Well, Doctor, you are now objecting to the title of this thing, and as we are at the point of the title now, suppose we just see what comes of that." To this Wood replied, "All right." The proper decision of this cause turns, in our opinion, on the right which, after this conversation, Wood had to rescind and withdraw any offer which he had made and embodied in the contract of April 21, which he had signed, for before he heard again from the company, or its agents or representatives, he had written and sent to Goodridge, French & Co. the following letter:

"Chicago, May 18, 1905.

Goodridge, French & Co., Chicago.

Gentlemen: Please return to me at once the $500 deposited with you on April 21, 1905. If you claim any right to hold this money by reason of any pretended contract of sale, I would respectfully call your attention to the fact that your clients refused to sign the only written proposition made over my signature, and I declined to accept the proposition made by your clients.

Yours very truly,
NATHAN N. E. WOOD."

This was plainly enough an attempted withdrawal from the proposed purchase, and if Wood had then a right to make such withdrawal, he was entitled to a return of the $500 called for. On May 23 the contract signed by Wood on April 21 was forwarded to Mr. Albert Goodridge, then in New York, by the Mutual Benefit Life Insurance Company, signed by the company, and accompanied by the following letter:

"The Mutual Benefit Life Insurance Company,
752 Broad Street,
Newark, N. J., May 23, 1905.

Mr. A. E. G. Goodridge,
Care Lotus Club, No. 558 Fifth Avenue,
New York City.

My dear Sir: We inclose contract for sale to Nathan

N. E. Wood of premises Nos. 628 and 630 LaSalle Avenue, Chicago, known as R. E. 991, the form being the original submitted to you, which we have never declined to execute.

We also inclose the copy of form of receipt given by you to Dr. Nathan N. E. Wood for $500 to apply on above contract.

We trust you will be able to close the sale without delay.

Yours truly,

SAM'L W. BALDWIN, Treasurer."

The inference is irresistible that the execution of this contract by the Mutual Benefit Life Insurance Company was not made until the letter of Wood to Goodridge, French & Company was brought to its attention, and that it was then made to furnish ground for holding Wood to his previous offer or forfeiting the $500 as liquidated damages for the breach of the contract.

We are not of the opinion that the company was in a situation to do this.

To quote from the language of Mr. Justice Washington in the Supreme Court of the United States a principle of the law of contracts universally admitted: "It is an undeniable principle of the law of contracts that an offer of a bargain by one person to another imposes no obligation upon the former until it is accepted by the latter according to the terms in which the offer was made. Any qualification of or departure from those terms invalidates the offer unless the same be agreed to by the person who made it. Until the terms of the agreement have received the assent of both parties, the negotiation is open and imposes no obligation upon either." Eliason v. Henshaw, 4 Wheaton, 225.

Until, therefore, the Mutual Benefit Life Insurance Co. had accepted the contract of April 21, 1905, the negotiation in this case was open and imposed no obligation on Wood. It follows from this that Wood being under no obligation, was at liberty to withdraw his offer, which he did by his letter to the agents of May 18, if not before.

There is no evidence whatever that the contract was signed by the Mutual Benefit Life Insurance Company before that

withdrawal, and, as we have said, the inference is well nigh irresistible the other way.

The argument is made by appellants that the Mutual Benefit Life Insurance Company accepted this contract of April 21 and acted on it by delivering an abstract of title to the appellee on April 29. This position is in the teeth of the evidence.

Wood testified, and it is not denied, that when the abstract was given to him he was told that the appellants had not heard whether or not the contract was approved, and it is also undisputed that the dissatisfaction with the offered contract was communicated to Wood at a later date, and a counter proposition offered him, which he declined. It is therefore plain that Wood is right when he says that the abstract was delivered to him "in order to save time if they made the deal."

It is also a part of the law of contracts, as declared by this court, that "A person who has submitted a counter proposition cannot, without the consent of the other party, withdraw or abandon the same and then accept the original offer which he has once virtually rejected." Fox v. Turner, 1 Ill. App., 153.

Even a modified acceptance of a proposition is, in effect, a rejection of it. K. C. P. & G. Ry. Co. v. McGuire, 108 Ill. App., 258; Anglo-American Prov. Co. v. Prentiss, 157 Ill., 506.

Under this undoubtedly correct doctrine it did not require even the notification which Wood gave the company's representatives on May 18 to make his right to the $500 in dispute perfect. Making the counter proposition was virtually, without even the express language of disapproval as to the original one, the rejection of the latter. It is, however, urged that Wood placed his refusal to proceed on the refusal of appellants to correct defects in the title, and therefore has no right to recover in this action.

This involves a *non sequitur* at best. It does not matter what were Wood's reasons for not waiving his right to consider the negotiations at an end after the counter proposition

had been made to him and declined by him.   The essential matter is, that he did not waive it, but insisted on it, and demanded his deposit back on account of it.

It is also said that if anybody is liable to Wood for the $500, it is the principal, the Mutual Life Insurance Company, and not their agents, Goodridge, French & Co.   This is not a sound contention.   The undertaking under which the return of the money to Wood is demanded, was expressly a personal one of the appellants.   Mead v. Altgeld, 33 Ill. App., 373; Mead v. Altgeld, 136 Ill., 298.

We see no error in the instructions.   Justice has been done, and the judgment of the County Court is affirmed. We do not, however, think the case one for the assessment of damages for delay.     -

*Affirmed.*